STATE OF TENNESSEE *vs.* J. C. ALLEN & others.

October Term, 1873.

RECEIVER—BETWEEN ADVERSE CLAIMANTS OF LEGAL TITLE.—The court is slow to appoint a receiver of realty in the peaceable possession of one party under a claim of right, when the contest is between claimants of the legal title; but this rule does not apply where the property is already in the custody of a receiver in suits between adverse claimants, and a third party, claiming adversely to all the other litigants, asks that the receivership be continued.

*Jno. C. Gaut & Wm. A. Quarles,* for complainant.
*E. H. East & N. Baxter,* for defendants.

THE CHANCELLOR :—This case is before me upon a motion, made by the state, to appoint a receiver to take charge, pending the litigation, of the property in dispute consisting of realty in Nashville.

The bill was filed, on the 21st of February, 1873, under the provisions of the act of May 26, 1866, ch. 46, amending the law of escheats, to have the estate of one Wm. P. Downs, who died in 1863, declared escheated because the deceased left no widow, nor issue, nor relatives entitled to inherit by the laws of descent. The right to the relief sought is based upon the fact of the illegitimacy of Downs, over whose estate several parties appear to be litigating by different suits. The bill charges that the defendants, Allen and wife, are claiming under a pretended will; that one A. J. Roper is setting up a pretended claim as heir at law of the deceased, and also is receiver in the case of *James M. Clark, et als.* v. *Henderson, et als.* in this court. The bill prays that proper accounts be taken with said Roper as receiver, with N. Baxter as receiver in the case of *Tempe Downs* v. *J. C. Allen & others*, and with J. C. Allen as receiver in the case of *Clark* v. *Henderson & others*, and as agent, guardian, and attorney in fact of pretended claimants, or as pretended heir and devisee of said Downs. It appears, therefore, that there are various suits about the estate by different claimants, and that the property is in the possession of receivers in these suits. The bill contains a prayer

for the appointment of a receiver, and it is stated by the counsel for the state that no motion has been made on this prayer because the property was already in hands of receivers with whose management they were satisfied. The immediate cause of the present motion is an application by the parties to the suit in which Roper is receiver, looking to a compromise of that litigation, and a surrender of a part of the property to one of the litigants free from the receivership.

These facts do sufficiently explain the delay in making the present motion, and that the proposal to enter a compromise decree, which will dispense with the existing receiver as to any of the property, is a reasonable ground for the motion, if the state is entitled to make it at all. The motion is resisted, because there has been unreasonable delay in making it and preparing the case for hearing on the part of the state, and because the bill does not make out a sufficient case to authorize the appointment of a receiver.

Upon the first of these objections, I am satisfied that the delay in making the application is sufficiently accounted for by the facts already mentioned. The court would not have interfered with the existing receiverships, or removed the receivers, without good cause shown, and it is conceded by the complainant that no such cause has heretofore existed. It is true the state might have had an order extending the terms of the receivership so as to have embraced this case, subject to the legal and equitable claims of all parties. *Howell* v. *Ripley*, 10 Paige, 43 ; *Osborn* v. *Heyer*, 2 Paige, 342. But it was not absolutely necessary to do this, so long as the property was well managed, and no attempt made to discharge the receiver. The delay in preparing the case is also accounted for. The court judicially knows, that, after the answers of the principal defendants had been filed, and no others have been filed, the April term of this court continued in session until the first Monday in July, and all of us know, what the affidavit states, that the cholera prevailed as a virulent epidemic in this city for a month longer, leav-

33

ing only two months before the commencement of this term.

If this application was to have a receiver for the first time upon property in possession of the defendants under an adverse claim as heirs and devisees of Wm. P. Downs, I should probably refuse it. The court is very slow to appoint a receiver of realty in the peaceable possession of defendants under a claim of right, and where the contest is between claimants of the legal title. For, the court cannot interfere with the legal title, unless there be some equity by which it can affect the conscience of the party in possession. *Knight* v. *Duplessis*, 1 Ves. 324; *Willis* v. *Corlies*, 2 Edw. Ch. 281; *Huguenin* v. *Baseley*, 13 Ves. 105. And such interference is, to a certain extent, giving relief, and, upon a preliminary motion, depriving the defendant of a present use and enjoyment of the estate, and, *pro tanto* and *pro tempore*, giving a decision against him. *Houlditch* v. *Lord Donegall*, 1 Beat. 402. The property was not, however, at the filing of this bill, in the peaceable possession of the defendants. On the contrary, it was in the custody of this court by its receivers, at the instance of several of these defendants setting up adverse claims to each other. If now, in this attitude of affairs, the claimants choose, in view of a claim hostile to all of them, to agree upon a division of the property among themselves by a compromise, and not by a judicial decision of their respective rights, the question of the appointment of a receiver could scarcely be said to turn upon peaceable possession under a legal title. The previous litigation, and the previous receiverships demonstrate that no one of the claimants is yet in peaceably under legal right. The very fact that each of these claimants has been able, as against the other, to have a receiver appointed, proves the existence of some equity to affect the conscience of each, and authorizes the appointment of a receiver, not to deprive them of a previous legal possession, but to continue the custody already assumed by the court until the rights of the parties can be adjudicated. The question is not the crea-

tion but the continuance of the receivership ; not the depri-
vation of an existing right but the prevention of the acquir-
ing a new right, it may be by collusion. The burden is not
upon the applicant to continue, but upon those who seek to
rescind the receivership. The present receiver will be con-
tinued until further order.