Robert H. McNair, Respondent, v. Thorvald Maijgren, Appellant.

First Department, December 31, 1917.

**Malicious prosecution — prosecution for larceny — failure of plaintiff to show termination of criminal proceedings in his favor.**

Action to recover damages for malicious prosecution based on the arrest of the plaintiff on a warrant charging him with larceny of certain samples of surgical instruments which he had in his possession as a salesman and which, it was contended, he failed to return upon demand. A friend of the plaintiff procured the withdrawal of the case against him by assuring the complainant that the instruments had been returned and that if any were lacking he would personally guarantee that they would be returned. As a matter of fact at the time of the arrest a portion of the instruments had not been returned. Evidence examined, and *held*, that a judgment for the plaintiff should be reversed because he had failed to establish by a preponderance of evidence that the criminal proceedings were terminated in his favor.

Appeal by the defendant, Thorvald Maijgren, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of February, 1917, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 15th day of March, 1917, denying defendant's motion for a new trial made upon the minutes.

*John M. Stull* of counsel [*Stull, Shedd & Morse,* attorneys], for the appellant.

*Alexander S. Bacon,* for the respondent.

Shearn, J.:

There was a verdict for plaintiff in an action for a malicious prosecution, based upon the arrest of plaintiff at Philadelphia on a warrant sworn out by defendant, charging plaintiff with the crime of larceny, in having stolen a case of surgical instruments of the value of $200, the property of the Electro Surgical Instrument Company of Rochester. The plaintiff had been for some time prior to his arrest a salesman in the employ of the company, using samples furnished and owned by the company. The defendant was the general manager of the company and the arrest was occasioned by the failure of the plaintiff to return the samples after demand.

On the issue of probable cause, the plaintiff's case is far from strong. We shall not review the evidence on this head because the judgment must be reversed upon another ground.

The most serious point in the case is whether the plaintiff established by a preponderance of the evidence that the criminal proceedings terminated in his favor within the rule applicable to this class of actions. (*Halberstadt* v. *New York Life Ins. Co.*, 194 N. Y. 1, 10.) The determination of this depends upon whether the prosecution was withdrawn solely because, after plaintiff's arrest, the defendant learned that the instruments had been returned by express a day or two prior to the arrest or whether the plaintiff effected a compromise and settlement that led to the withdrawal of the charge.

On plaintiff's side we have only his own testimony, which is that immediately after the arrest he communicated with Dr. Fithian, an old friend and college classmate, and told him that he had been arrested for embezzlement of the instruments and asked him to come over from Camden; that Dr. Fithian came to his cell and said: " Just keep cool, we have the thing settled, we have got them all right; " that Dr. Fithian then said: " Have you a watch?" and that plaintiff " without thinking " handed it to him and the next he knew he was called into the courtroom and the case was withdrawn. From this it would of course appear that whatever Dr. Fithian did in the way of settling the case, plaintiff knew nothing about it and had nothing to do with it, and

this is his contention. Passing for the moment the improbability of plaintiff's testimony that there was no talk between him and Dr. Fithian with regard to getting the case settled and that his friend without a word of explanation demanded and received plaintiff's watch for some purpose or reason not disclosed, let us turn to the testimony of Dr. Fithian, who was called by the defendant. He had no interest in the controversy and his testimony, freely given, bears the stamp of truth. He was, as above stated, an old friend of the plaintiff and had gone far out of his way to assist the plaintiff in his trouble, and there is nothing to indicate any reason why he should have endeavored to make the facts suit the defendant's side of the case. Dr. Fithian testified to receiving the telephone message and promising to come right over after his office hours; that he went to Philadelphia accompanied by a lawyer and hunted up the complainant; that he assured the complainant that the case of instruments had been returned but said that he could not say that they had *all* been returned; that he assured the complainant that he would do all in his power, if all the instruments had not been returned, to get the plaintiff to return the balance and would use his influence to get him to straighten up his accounts. No conclusion was reached by the complainant. Thereupon Dr. Fithian saw the plaintiff and told him that he had assured the complainant that the case of instruments had been returned and that if all of the instruments were not returned he, Dr. Fithian, was to guarantee the balance to be returned. " I asked him if he had any security to give me for my guarantee. He said he had nothing but his watch, which he handed over. * * * I went back to Mr. Maijgren [the defendant] and I told him that I had his watch and that I would use every influence in my power to have him return the rest of the instruments, and would hold his watch until such time as he said to return it. * * * Then Mr. Maijgren said that he would have the case dropped." Thereupon the parties went directly to the Police Court and the complaint was withdrawn. It is conceded that not all of the instruments had been returned at this time, and it appears that one instrument and various parts of the apparatus turned over to plaintiff to enable

him to séll the goods, which were not returned, amounted to some fifty-nine dollars in value. The arrangement between Dr. Fithian and the complainant as testified to by Dr. Fithian was corroborated by the testimony of the defendant. Weighing the improbable story of the plaintiff against the entire probable and disinterested testimony of his friend, corroborated by the defendant, and taking into consideration the fact that plaintiff knew that not all of the instruments had been returned, it must be said that the weight of the evidence is strongly to the effect not only that Dr. Fithian, acting for the plaintiff, induced the withdrawal of the complaint by giving his own guaranty, but that the plaintiff was fully aware of what Dr. Fithian was doing and acquiesced therein.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

SCOTT, SMITH and PAGE, JJ., concurred.

CLARKE, P. J.:

I concur. I am also of the opinion that plaintiff not only failed to prove want of probable cause, and that the verdict of the jury to the contrary was against the weight of the evidence, but that probable cause for the arrest was clearly established.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.